# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

THE AMERICAN COAL COMPANY,     )
                                       )

          Plaintiff,        )
                                       )

          v.             )     Case No. 08-cv-814-MJR-CJP
                                       )

MINE SAFETY AND HEALTH      )     Judge Michael J. Reagan
ADMINISTRATION, et al.,          )
                                       )

          Defendants.     )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' FED. R. CIV. P. 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Richard E. Lieberman
Gail Chaney Kalinich
Gary Y. Leung
Jeannil D. Boji
McGuireWoods LLP
77 W. Wacker Dr., Suite 4100
Chicago, Illinois 60601-1815
312.849.3068
312.849.3690 (fax)

*Counsel for The American Coal Company*

ARGUMENT ................................................................................................................ 1

    I.     **This Court Has Subject Matter Jurisdiction** ...................................... 1

         A.     **The Mine Act's Administrative Process Is Not Designed For This Cause of Action** ................................................................. 1

               1.     The District Court has jurisdiction because the claims are wholly collateral to the Mine Act's statutory review provision, and the absence of jurisdiction in this forum would foreclose all meaningful judicial review .......................... 2

                      a.     TACC's challenge to MSHA's quota is wholly collateral to the Mine Act's section 815(d) statutory review provision ............................................................... 3

                      b.     This case is not a challenge to a particular citation, order or proposed penalty, so the Mine Act does not provide administrative review ........................................... 5

                           i.     The Report of the Labor Department's Inspector General strongly supports Plaintiff's position ................................................. 6

                           ii.     Supreme Court and Circuit Court precedent also draw the distinction between an isolated enforcement action and an overarching agency policy ......................................................... 7

                      c.     Without district court review, all meaningful review of the quota directive would be foreclosed ..................... 10

                           i.     The legality of the quota directive cannot be fairly and fully litigated in the review forum afforded by sections 815(d) and 816 of the Mine Act ....................................................... 10

                           ii.     A favorable ruling by an MSHRC administrative law judge would be mere dicta with no issue preclusive effect in other citation contests .................................................. 12

                      d.     Because TACC's challenge to the quota directive raises issues that are unrelated to the facts of a particular "citation, order, or proposed penalty," it is a "facial" challenge that is properly litigated in the district court ................................................................... 13

               2.     The district court has jurisdiction over claims that agency action is *ultra vires* ...................................................................... 14

# TABLE OF CONTENTS
## (continued)

3. The district court has jurisdiction under the doctrine of nonstatutory review ...................................................................... 15

4. MSHRC decisions relied upon by defendants do not support its arguments .................................................................. 15

5. Defendants' argument on formal regulation is unavailing .......... 16

**B. This Court Has Subject Matter Jurisdiction Over Count III For De Facto Rulemaking** ........................................................................ 17

**C. TACC's Claims Are Ripe For Judicial Review** ................................. 19

1. TACC's claims raise purely legal issues ..................................... 20

2. The quota directive is a final agency action ............................... 22

3. The hardship to TACC outweighs the benefit of postponing review ............................................................................................ 23

**II. Each of TACC's Counts Adequately States a Claim Upon Which Relief Can Be Granted** .................................................................................. 24

**A. Federal Rule of Civil Procedure 12(b)(6) Standard** ........................... 24

**B. TACC's Count I States a Claim For Deprivation of Procedural Due Process** ........................................................................................ 25

**C. TACC's Count II States a Claim For Ultra Vires Action** ................. 27

**D. TACC's Count III States a Claim for De Facto Rulemaking** ........... 28

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ASARCO, Inc. v. Secretary of Labor*, 206 F.3d 720 (6th Cir. 2000) ................................13

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)......................................................19

*Aid Association for Lutherans v. United States Postal Service*, 321 F.3d 1166
(D.C. Cir. 2003) ..................................................................................................14, 27

*American Federal of Government Employees v. Federal Labor Relations
Authority*, 750 F.2d 143 (D.C. Cir. 1984)....................................................................21

*American Hospital Association v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987) ....................28

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ..............................28, 29

*Assure Competitive Transport, Inc. v. United States*, 635 F.2d 1301 (7th Cir.
1980) ...........................................................................................................................29

*Bath Iron Works Corp. v. Coulombe*, 888 F.2d 179 (1st Cir. 1989)................................12

*Beck v. Deloitte & Touche*, 144 F.3d 732 (11th Cir. 1998) ..............................................24

*Bennett v. Spear*, 520 U.S. 154 (1997) ...........................................................................22

*Bethlehem Steel Corp. v. EPA*, 536 F.2d 156 (7th Cir. 1976) ...................................22, 23

*Better Government Association v. Department of State*, 780 F.2d 86 (D.C. Cir.
1986) ..................................................................................................................... *passim*

*Capital Legal Foundation v. Commodity Credit Corp.*, 711 F.2d 253 (D.C. Cir.
1983) ...........................................................................................................................18

*Capitol Technical Services, Inc. v. F.A.A.*, 791 F.2d 964 ...........................................20, 21

*Central Ala. Comprehensive Health Care, Inc. v. Aventis Pharmaceuticals, Inc*,
427 F. Supp. 2d 1129 (D. Ala. 2006)............................................................................7

*Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986)................................................22

*Cushing v. City of Chicago*, 3 F.3d 1156 (7th Cir. 1993)..................................................24

*Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988) ......................................9, 13, 14, 27

*DeLorean Motor Co. v. Weitzman*, 991 F.2d 1236 (6th Cir. 1993) ...................................24

*Fidelity National Title Insurance Co. v. Intercounty National Title Insurance Co.*, 412 F.3d 745 (7th Cir. 2005) ......................................................24

*Fox TV Stations, Inc. v. FCC*, 280 F.3d 1027 (D.C.Cir.2002) ..........................................20

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 537 F.3d 667 (D.C. Cir. 2008) .............................................................8, 9

*GE v. EPA*, 290 F.3d 377 (D.C. Cir. 1992) ..........................................................24

*GE v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) ..........................................................9

*Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) .....................................................24

*Hospital Council of Western Pennsylvania v. Pittsburgh*, 949 F.2d 83 (3d Cir. 1991) ..................................................................26

*Ineos Polymers Inc. v. BASF Catalysts*, 553 F.3d 491 (7th Cir. 2009) .............................27

*International Union, United Mine Workers v. MSHA*, 900 F.2d 384 (D.C. Cir. 1990) ..................................................................18

*J&B Entertainment v. City of Jackson, Mississippi, NO. Civ. A. 3:06-CV-144WS*, 2006 WL 1118130 (S.D. Miss. Apr. 7, 2006) ...........................................26

*Jasperson v. Federal Bureau of Prisons*, 460 F. Supp. 2d 76 (D.D.C. 2006) .............14, 15

*Leedom v. Kyne*, 358 U.S. 184 (1958) ...............................................................14

*Litgo New Jersey, Inc. v. Jackson*, No. 06-2891 (AET), 2006 WL 3333486 (D.N.J. Nov. 16, 2006) .....................................................26

*Maxon Marine v. Director, Office of Workers' Comp. Programs*, 39 F.3d 144 (7th Cir. 1994) ..................................................................15

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) ....................................... *passim*

*National Mining Association v. Fowler*, 324 F.3d 752 (D.C. Cir. 2003) .........................19

*National Mining Association v. DOL*, 292 F.3d 849 (D.C. Cir. 2002) ......................4, 5, 9

*Ohio Forestry Association v. Sierra Club*, 523 U.S. 726 (1998) ................................23, 24

*Olim v. Wakinekona*, 461 U.S. 238 (1983) ......................................................................25

*Olson v. MSHRC*, 381 F.3d 1007 (10th Cir. 2004).........................................................12

*Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33 (D.C. Cir. 1974)......................................................................................................................29

*Perry v. Sindermann*, 408 U.S. 593 (1972).....................................................................26

*R.I. Department of Environmental Management v. United States*, 304 F.3d 31 (1st Cir. 2002) .......................................................................................................................15

*Ramah Navajo Sch. Board v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996)...........................18

*Sea-Land Serv. v. DOT*, 137 F.3d 640 (D.C. Cir. 1998)................................................26

*Singer Co. v. P.R. Mallory & Co.*, 671 F.2d 232 (7th Cir. 1982)..............................21, 22

*Stark v. Wickard*, 321 U.S. 288 (1944) ..........................................................................14

*Sturm, Ruger & Co. v. Chao*, 300 F.3d 867 (D.C. Cir. 2002) ..................................16, 17

*Thunder Basin Coal Co. v. Martin*, 969 F.2d 970 (1992)..................................................3

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)........................................... *passim*

*Women's Medical Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006)...........................25

*Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994)............19, 28

**AGENCY DECISIONS**

*Drummond Co.*, 14 FMSHRC 661 (1992).......................................................................16

*Empire Iron Mining Partnership.*, 29 FMSHRC 999 (2007) .....................................15, 16

*Keystone Coal Mining Corp.*, 16 FMSHRC 6 (1994) .....................................................16

*SCP Investments, LLP*, 30 FMSHRC 544 (2008)...........................................................16

*Summit, Inc.*, 19 FMSHRC 1326 (1997).........................................................................16

*Twentymile Coal Co.*, 27 FMSHRC 260 (2005)..............................................................16

# FEDERAL STATUTES

5 U.S.C. § 6.................................................................................................................7

5 U.S.C. § 551...............................................................................................................2

5 U.S.C. § 553..............................................................................................................28

15 U.S.C. § 78y.........................................................................................................8, 9

30 U.S.C. § 104..........................................................................................................25

30 U.S.C. § 801.............................................................................................................1

30 U.S.C. § 811.......................................................................................17, 18,19, 28

30 U.S.C. § 814.....................................................................................14, 22, 29

30 U.S.C. § 815................................................................................................. *passim*

30 U.S.C. § 816..............................................................................1, 2, 11, 13

# FEDERAL REGULATIONS

29 C.F.R. § 2700..................................................................................................11, 12

30 C.F.R. § 2700................................................................................................................1

# FEDERAL RULES

Fed. R. Civ. P. 12............................................................................1, 24, 28, 30

Plaintiff The American Coal Company ("TACC") hereby submits its response in opposition to Defendants Mine Safety and Health Administration ("MSHA"), Richard E. Stickler, Kevin G. Stricklin, Robert L. Phillips, David L. Whitcomb, Keith Roberts, and Steve Miller's (collectively, "Defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 10).  For its opposition, TACC states the following:

<span style="font-variant:small-caps">Argument</span>

## I. This Court Has Subject Matter Jurisdiction.

### A. The Mine Act's Administrative Process Is Not Designed For This Cause of Action.

Defendants argue that TACC's lawsuit is, in effect, an enforcement challenge to citations and penalties levied by MSHA against TACC which must be adjudicated through the administrative review process under the Federal Mine Safety and Health Act, 30 U.S.C. §§ 801, *et seq.* ("the Mine Act").  (Defs. Mem. Supp. Mot. Dismiss 2, 5.)  Defendants assert that federal district court subject-matter jurisdiction is absent based on the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) because TACC seeks to improperly bypass the Mine Act's statutory administrative procedure for contesting a "citation, order, or proposed penalty."  *See* 30 U.S.C. §§ 815(d), 816; 30 C.F.R. § 2700, *et seq.*; *Thunder Basin*, 510 U.S. at 207.  Defendants' position is incorrect, for TACC's complaint ("the Complaint") does not attack the validity of any MSHA enforcement order, citation, or penalty determination, nor does it address any individual administrative pre- or post-enforcement case or proceeding.  Instead, this lawsuit is a general, collateral challenge to an unconstitutional, *ultra vires* quota directive that MSHA officials sought to apply across the board to its enforcement activities, and thus is not subject to the statutory administrative procedure.

1. **The District Court has jurisdiction because the claims are wholly collateral to the Mine Act's statutory review provision, and the absence of jurisdiction in this forum would foreclose all meaningful judicial review.**

The Complaint expressly alleges that "Plaintiff's challenge to the quota directive is wholly collateral [to the Mine Act's statutory review provisions] in that the rigid application of a .4 violation per inspector hour quota simply does not implicate agency expertise." (Compl. ¶ 62). The Supreme Court in *Thunder Basin* held that district courts have jurisdiction over claims that are "wholly 'collateral' to a statute's review provisions and outside the agency's expertise," or where divesting the district court of jurisdiction "could foreclose all meaningful judicial review." 510 U.S. at 212-13 (citations omitted). Both apply here.

First, the Mine Act and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et. seq.* ("the APA"), draw a clear distinction between specific enforcement actions (citations, orders, or proposed penalties) which must be litigated through the administrative process, and other MSHA enforcement practices which may be challenged directly in district court, particularly where the cause of action is a generic challenge to a broad-based agency policy or practice. Indeed, the Mine Act adjudicative process set forth in 30 U.S.C. §§ 815(d) and 816 is limited by statute to orders, citations and penalties. Thus, the Mine Safety Health Review Commission's ("the MSHRC") review process for MSHA enforcement activity does not encompass facial violations of the Mine Act itself.

Second, because statutory review under sections 815(d) and 816 of the Mine Act is specifically limited to the evidentiary record developed in connection with a specific "citation, order, or proposed penalty," the underlying administrative hearing will only adjudicate the particular safety citation that has been challenged. 30 U.S.C. §§ 815(d) and 816. Therefore, the Mine Act's administrative process does not provide any forum in which to challenge a general quota which may be wholly unrelated to a specific violation. And even if an individual

administrative hearing attempted to address the broader quota issue, any findings would not be entitled to collateral estoppel in future proceedings; hence, the overarching challenge to a quota's legality cannot be remedied in the administrative litigation.

   **a. TACC's challenge to MSHA's quota is wholly collateral to the Mine Act's section 815(d) statutory review provision.**

   The *Thunder Basin* court held that even when a statute sets forth a comprehensive administrative enforcement and review process, a federal district court has subject matter jurisdiction over claims that are "wholly 'collateral' to a statute's review provisions and outside the agency's expertise." 510 U.S. at 212. Significantly, section 815(d) of the Mine Act provides only for administrative adjudication through the MSHRC process of any "citation, order, or proposed penalty" assessed by MSHA against an operator. 30 U.S.C. § 815(d). The present suit, however, is "wholly collateral" to this statutory review provision because the constitutionality and legality of MSHA's quota does not implicate any individual "citation, order, or proposed penalty," but rather is a generic collateral challenge to a broad based MSHA directive.

   *Thunder Basin's* holding in a different context does not affect jurisdiction in this case. The gravamen of the *Thunder Basin* case was "a dispute over an anticipated citation and penalty" regarding whether non-employees could accompany an MSHA inspector on an inspection at the company's mine. *Thunder Basin*, 510 U.S. at 206 (quoting *Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 975 (1992)). *Id.* There, the mine operator anticipated that a specific citation, based on very specific facts, and implicating very specific provisions of the Act, would result from its intended actions. *Id.* By contrast, in the present case, TACC does not seek relief from any specific (actual or anticipated) MSHA "citation, order, or proposed penalty"; instead, TACC's lawsuit challenges MSHA's *de facto* promulgation of an across-the-board quota, wholly unrelated to any particular safety violation.

A much more pertinent case is *National Mining Ass'n. v. DOL*, 292 F.3d 849 (D.C. Cir. 2002), in which the court held that the district court had jurisdiction over a pre-enforcement challenge to regulations promulgated by the Department of Labor applicable to miners covered by the Black Lung Benefits Act.  292 F.3d at 856-57.  The court based its decision on the fundamental difference between a challenge to an agency procedure or policy with broad application, and an individual case involving enforcement of an order that does not extend past the four corners of the order itself.  *Id*.  In *National Mining,* as here, "the government [had] challenged the District Court's jurisdiction to hear appellants' broad-scale attack on the Department's regulations. . ." because the statute provided solely for administrative litigation followed by review of a final order by the court of appeals.  *Id*. at 856.  In rejecting the government's argument, the *National Mining* court held that "[t]he obvious difficulty with the government's position is that this provision [in the statute] putting exclusive review jurisdiction in the Court of Appeals speaks of orders, but Congress in passing the APA drew a distinction between *orders*, which typically follow adjudications, and *regulations*."  *Id*. (citation omitted) (emphasis added).  Because of this important distinction, the court concluded that the challenge to the allegedly unconstitutional regulation was properly brought directly before federal district court, and that Congress did not deprive a district court of subject matter jurisdiction of such general collateral court challenges.  *Id*.  at 859.  The court noted that as a practical matter, challenges to a broad based procedure could not be appropriately remedied through individual administrative litigation.  *Id*. at 856-857 (citing the Supreme Court's decision in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).  The court reviewed the body of case law focusing on the difference between administrative litigation – which by its nature is designed to deal with the facts of a particular violation, utilizing government expertise to resolve and those

causes of action designed to challenge – and overreaching rules that implicate constitutional considerations that are not linked to any particular, individual violation. *Id.* at 857-860. In holding that the lawsuit against the Department of Labor was properly brought in federal district court, the court distinguished the facts in its case from *Thunder Basin,* which had involved a challenge specifically tied to a particular anticipated citation which could easily be resolved in administrative litigation. *Id.* at 857-858. *National Mining* accordingly stands for the broader proposition that when judicial review "would not be feasible [through] individual adjudications," the district court should exercise jurisdiction over the regulatory challenge. *Id.* at 858.

### b. This case is not a challenge to a particular citation, order or proposed penalty, so the Mine Act does not provide administrative review.

The specific language of the Mine Act's administrative litigation and review procedure applies only to resolution of citations, orders or proposed penalties. The Mine Act provides that:

> If . . . an operator of a coal or other mine notifies the Secretary that he intends to contest the issuance or modification of an *order* issued under section 814 of this title, or *citation* or a notification of *proposed assessment of a penalty* issued under subsection (a) or (b) of this section, or the reasonableness of the length of abatement time fixed in a citation or modification thereof issued under section 814 of this title . . . the Commission shall afford an opportunity for a hearing . . . and thereafter shall issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's *citation, order, or proposed penalty*, or directing other appropriate relief.

30 U.S.C. § 815(d) (emphasis added).

In the present case, TACC does not seek judicial review of any individual "citation, order, or proposed penalty." *Id.* When, as in the present case, the statute "does not address the kind of procedural and constitutional claims" brought by a plaintiff against an administrative agency, those statutory review procedures do not preclude judicial review in the district court. *McNary*, 498 U.S. at 493. As in *McNary*, TACC here challenges "a practice or procedure employed in making decisions;" that is, the generic application of an unlawful quota directive.

*See Id.* at 495-497. This is not a single act (*i.e.*, a specific "citation, order, or proposed penalty"), but an unconstitutional policy that applies to MSHA's overall enforcement activities. 30 U.S.C. § 815(d). Here, TACC does not sue for the vacatur or modification of any particular "citation, order, or proposed penalty" which Section 815(d) covers; rather this is a constitutional challenge properly brought in federal district court.

> ### i. The Report of the Labor Department's Inspector General strongly supports Plaintiff's position.

A January 9, 2009 report issued by the United States Department of Labor Office of Inspector General ("the OIG") regarding MSHA's quota directive strongly supports TACC's position that there is a critical difference between the review process for a "specific enforcement action" by MSHA, and a lawsuit challenging a widely-applied unlawful quota – the former is reviewable under the Mine Act's statutory administrative procedure, but the latter is not. (*See* report issued by the OIG on January 9, 2009 and corresponding cover letter, incorporated herein and attached hereto as Ex. A (hereinafter "OIG Report."))

Based on reports by TACC to the OIG of various improper actions by MSHA, the OIG conducted an investigation. (*See* Ex. A, OIG Report.) Some of the actions challenged had resulted in a specific citation, whereas other complaints challenged more general MSHA enforcement policies and practices. (*See* Ex. A, OIG Report.) After completing an audit, the OIG declined to assess "the merits of [TACC's] complaints regarding the appropriateness of *specific* enforcement actions," because such actions are properly dealt with by an administrative review under the Mine Act. (Ex. A, OIG Report at 1) (emphasis added). In contrast, however, the OIG did recognize the generic complaints, which it characterized as "statutory, regulatory and operational issues that require resolution to assure consistent implementation of MSHA's oversight responsibilities at all coal mines." (Ex. A, OIG Report at 2.) Among the issues that

the OIG felt constituted a more general complaint, unrelated to a specific citation, was the very same quota directive at issue in this case – that "MSHA's District 8 management directed inspectors to issue a predetermined minimum number of violations per inspector hour." (Ex. A, OIG Report at 2.)

The OIG's recognition that the "enforcement quota" is not appropriately part of administrative review procedure but instead part of the "statutory, regulatory and operational issues that require resolution to assure consistent implementation of MSHA's oversight responsibilities at all coal mines," is wholly consistent with Supreme Court and circuit court case law discussed in this brief.[1] (Ex. A, OIG Report at 1, 5, 7) (also requesting "that MSHA inform the OIG of any actions which it plans to address the issues and recommendations … within 60 days." MSHA failed to respond within the prescribed time and, as of the filing of this brief, no MSHA response has been provided to Plaintiff).

### ii. Supreme Court and Circuit Court precedent also draw the distinction between an isolated enforcement action and an overarching agency policy.

Like the OIG, the U.S. Supreme Court in *McNary* drew a similar distinction between single enforcement actions that are subject to administrative review, and broader procedures that should be resolved by a district court. 498 U.S. at 487-488. The Supreme Court held that a district court had subject matter jurisdiction over a petitioner's due process challenge to an ongoing agency procedure – an interview procedure by the INS to determine Special

---

[1] It should also be noted that TACC's complaint to the OIG regarding the quota does not constitute participation in the Mine Act's administrative process. *See* 5 U.S.C. § 6 (providing that the OIG has discretionary authority to investigate and report and not to adjudicate or enforce); *see also Cent. Ala. Comprehensive Health Care, Inc. v. Aventis Pharms., Inc,* 427 F.Supp.2d 1129, 1131-32 (D. Ala. 2006) (finding that OIG investigation of the same matter before the court did not provide basis for dismissing or delaying court action "because the OIG has authority only to investigate and report, 5 U.S.C. § 6, and not to adjudicate or enforce. Thus, no matter how many reports the OIG generates, it cannot resolve the matter currently before the court.") Moreover, as a practical matter, OIG cannot provide any relief from the quota as the OIG can only make recommendations which an agency may simply disregard. *See* 5 U.S.C. § 6.

Agricultural Workers (SAW) immigration eligibility. *Id*. The Court stated that the administrative procedure under the statute is a "reference to 'a determination' [that] describes a *single act* rather than a group of decisions or a *practice or procedure* employed in making decisions." *Id*. at 491-92 (emphasis added). Because the due process challenge in *McNary*, alleging that arbitrary procedures were employed by the INS when considering workers' applications, did not focus upon any single "determination," the Supreme Court held that "limiting judicial review of these claims to the [administrative] procedures set forth in § 210(e) is not contemplated by the language of that provision." *Id*. at 493. So too, in the present case. Because TACC's lawsuit is not encompassed by the Mine Act's statutory review provisions for any individual "citation, order, or proposed penalty," 30 U.S.C. § 815(d), and because the cause of action is not limited to any single matter, but rather to "a group of decisions or a practice or a procedure in making decisions," there is subject matter jurisdiction over this lawsuit. *Id*. at 492.

The *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 537 F. 3d 667 (D.C. Cir. 2008), case also provides useful precedent. Like section 815(d) of the Mine Act, a provision of the Sarbanes-Oxley Act of 2002 ("SOX"), 15 U.S.C. § 78y, limits review of certain agency actions to any "order" or "rule" of the Securities Exchange Commission to the court of appeals. *Free Enter. Fund*, 537 F.3d at 670-671. Because the *Free Enterprise Fund* plaintiff did not pursue administrative remedies but immediately filed suit in the district court, the government argued that the district court lacked jurisdiction to consider the plaintiff's claims, relying on *Thunder Basin*. *Id*. The appellate court disagreed, noting the material distinction between "facial, or systemic" challenges, and "as-applied, or particularized" challenges. *Id*. at 671. Since it fell within the former category, the plaintiff's regulatory challenge did not circumvent SOX's review procedures because its lawsuit did "not attempt to bootstrap other

claims regarding a Board *order* or *rule*" – the only agency actions for which 15 U.S.C. § 78y conferred exclusive review jurisdiction to the circuit court of appeals. *Id.* (emphasis added). As in *Free Enterprise Fund*, it is evident from the face of TACC's Complaint that its suit is a *facial* challenge to a *systemic* agency action. The equitable relief that TACC seeks is exclusively directed to the overall application of MSHA's quota, and not any particular "citation, order, or proposed penalty." *See* 30 U.S.C. § 815(d).

*See also GE v. EPA*, 360 F.3d 188 (D.C. Cir. 2004), holding that district court had jurisdiction to consider facial constitutional challenge to EPA administrative order *regime* and rejecting government's contention that the lawsuit, at bottom, arose from GE's disagreement with *specific* unilateral administrative orders entered against it by the EPA, for which pre-enforcement review was precluded by statute. In *GE*, it was of no consequence to the court that, parallel to the federal suit, GE and the EPA continued to have "ongoing interactions over remediation at several locations." *Id.* at 191. Thus, TACC's ongoing and concurrent administrative appeals of specific "citation[s], order[s], or proposed penalt[ies]" have no bearing on the ultimate issue in this case – whether MSHA's quota directive is facially invalid.

In sum, a regulated party does not "circumvent" statutory review procedures when its lawsuit brings a "facial" or "systemic" challenge to the validity of agency action. *Free Enter. Fund,* 537 F. 3d at 671. Claims of this kind are "wholly collateral" causes of action that are not "of the type Congress intended to be reviewed within th[e] statutory [review] structure." *Id*. "Facial" statutory violations are those which raise issues "unrelated to the facts of the particular cases" and thus "need only be resolved by the courts once." *Dart v. United States*, 848 F.2d 217, 222 (D.C. Cir. 1988). The common thread between *McNary*, *National Mining*, *GE*, and *Free Enterprise Fund* is that in each case, the plaintiffs sought judicial review of agency action which

could not be meaningfully addressed by the agency's administrative review provisions at hand – the same situation in this case.

### c. Without district court review, all meaningful review of the quota directive would be foreclosed.

*Thunder Basin* also provides that this Court may assume jurisdiction when "a finding of preclusion could foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212-13. That is the case here.

### i. The legality of the quota directive cannot be fairly and fully litigated in the review forum afforded by sections 815(d) and 816 of the Mine Act.

Defendants argue that whether a citation was issued pursuant to the quota directive is largely irrelevant to the underlying merits of the citation itself because: "Contrary to the premise of American Coal's claims, the Court should not assume that, if the purported quota directive exists, MSHA inspectors would act unlawfully and issue unfounded citations . . . The directive, if it existed, would be a directive to MSHA inspectors to issue a certain number of citations. It would not compel inspectors to issue a citation if they did not observe what they believed to be a violation of American Coal's existing legal obligations, and it would not direct American Coal to do anything other than comply with the cited standards." (Defs. Mem. 13-14). Although it is unclear what relevance this argument has at a stage in the litigation where all of TACC's allegations are to be considered true, Defendants' reasoning has an unintended effect. It supports the conclusion that unless TACC is permitted to proceed in the district court, there can be no meaningful review of MSHA's quota directive because the government is denying that the quota was applied in any individual citation. Moreover, any administrative determination would necessarily depend solely on whether there is an evidentiary basis for the individual citation – not on whether there is evidence of the existence of a quota.

The previously discussed Supreme Court decision, *McNary,* strongly supports this point. *See* 498 U.S. at 497. The court relied, in part, on the fact that to prove their due process challenge, the plaintiffs would have to submit evidence showing the ineffectiveness of the challenged INS interview procedures. *Id.* The court expressly noted, however, that most of this "procedural" evidence would be irrelevant to an adjudication on the merits of a particular individual application. *Id.* Thus, even though the Act provided post-deportation judicial review in the court of appeals, the plaintiffs' due process claim could not be fairly and adequately litigated in that statutory forum:

> To establish the unfairness of the INS practices, respondents in this case adduced a substantial amount of evidence, most of which would have been irrelevant in the processing of a particular individual application. Not only would *a court of appeals reviewing an individual SAW determination therefore most likely not have an adequate record as to the pattern of INS's allegedly unconstitutional practices*, but it also would lack the factfinding and record-developing capabilities of a federal district court.
>
> * * *
>
> It therefore seems plain to us . . . that restricting judicial review to the courts of appeal as a component of the review of an individual deportation order is the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims.

*Id.* (emphasis added).

The facts in *McNary* mirror those at issue here. Under the Mine Act, only "relevant" evidence (*i.e.*, evidence relating to the merits of the safety citation) is admissible in contest proceedings before an MSHRC administrative law judge ("ALJ"). 29 C.F.R. § 2700.63(a).[2] Here, as in *McNary*, the touchstone issue – whether the quota directive is constitutionally suspect or *ultra vires* of the Mine Act – cannot be adequately presented within the context of an individual administrative litigation because, as Defendants acknowledge, the quota directive does

---

[2] Absent "extraordinary circumstances," review of the MSHRC's decision by a circuit court of appeal is limited to the administrative record before the ALJ. 30 U.S.C. § 816(a)(1).

not bear on the underlying merit of a particular "citation, order, or proposed penalty." (*See* Defs. Mem.) Defendants effectively assert, quite accurately, that the merits of any individual MSHA safety citation do not impact the generic cause of action here. (*See* Defs. Mem.at 18-19). Indeed, whether a particular citation is upheld or rejected does not show whether the quota generated the citation, nor does it enlighten legal questions regarding the quota's constitutionality or legality. The quota is not material to any particular administrative citation hearing as it is essentially irrelevant to an administrative law judge when reaching his or her decision on the merits of whether there is evidence to support the safety citation. Stated another way, even if a particular citation is overturned by an ALJ because MSHA's evidence of a violation is insufficient, it does not prove or disprove that the quota was the reason for the issuance of the citation. In short, the administrative process is an entirely inappropriate forum to adjudicate this cause of action.

ii. **A favorable ruling by an MSHRC administrative law judge would be mere dicta with no issue preclusive effect in other citation contests.**

Even if TACC were to prevail in an individual citation contest by proving that: (i) no violation of the Mine Act occurred; and (ii) the issuance of the citation was wrongfully compelled by the quota, the second finding would have no collateral estoppel effect in later proceedings because it would not be essential to the MSHRC's determination. *See*, *e.g.*, *Bath Iron Works Corp. v. Coulombe*, 888 F.2d 179 (1st Cir. 1989). Because a favorable ruling on the quota directive in a particular statutory appeal is not issue preclusive as to other citation contests, it cannot afford the relief sought by the instant suit – a judicial declaration that the quota directive is facially unlawful in all of its applications. Compounding matters further is that unreviewed decisions of the ALJ are not binding precedent. 29 C.F.R. § 2700.69(d); *Olson v. MSHRC*, 381 F.3d 1007, 1014 (10th Cir. 2004). Moreover, should TACC attempt to obtain an

affirmance of the ALJ's hypothetical favorable quota directive ruling in the court of appeals, it is doubtful that the circuit court would even have appellate jurisdiction under 30 U.S.C. § 816. *See ASARCO, Inc. v. Secretary of Labor*, 206 F.3d 720, 723-24 (6th Cir. 2000) (holding that statutory appellate jurisdiction over decision of administrative review commission was absent where commission ruling appealed from lacked preclusive effect and was not binding on commission).

> **d. Because TACC's challenge to the quota directive raises issues that are unrelated to the facts of a particular "citation, order, or proposed penalty," it is a "facial" challenge that is properly litigated in the district court.**

"Facial" violations of a statute concern issues "unrelated to the facts of the particular cases," and "need only be resolved by the courts once." *Dart*, 848 F.2d at 222. In this context, the policy promoted by the administrative exhaustion requirement – avoidance of a flood of lawsuits – is not implicated in a facial challenge because "courts can review alleged violations of this sort, while still preserving the finality that Congress sought in the vast majority of cases." *Id*.

A specific citation's validity (or lack thereof) is disconnected from the legality of the MSHA quota. This suit alleges that the quota directive is unconstitutional, and that it manifestly conflicts with the Mine Act because a quota would require the issuance of citations to meet the quota regardless of the merits of the citation. As the OIG Report stated, the MSHA Handbook requires that the mine inspector must issue a citation when the inspector "believes that the operator has committed a violation of the Mine Act." (Ex. A, OIG Report at 1.) Accordingly the OIG recommended to MSHA that "citations in orders for violations are to be based on observations made during the course of an inspection." (Ex. A, OIG Report at 5) (emphasis added). Clearly then, TACC's cause of action addresses "issues unrelated to the facts" of a particular "citation, order, or proposed penalty" and its challenge to the quota "need only be resolved by the courts once." *See Dart*, 848 F.2d at 222 (holding that notwithstanding provisions

of Export Administration Act barring judicial review of "functions exercised" by the Secretary under the Act, the district court had jurisdiction to consider an alleged facial violation of the statute which bore no relation to the facts of a particular case).

**2. The district court has jurisdiction over claims that agency action is *ultra vires*.**

There is a presumption in favor of district court jurisdiction when "an agency is charged with acting beyond its authority," in which case "courts are normally available to reestablish the limits on [its] authority." *Id.* at 221, 224. It is well established that "judicial review is available when an agency acts *ultra vires*." *Aid Ass'n for Lutherans v. United States Postal Service*, 321 F.3d 1166, 1173 (D.C. Cir. 2003); *see also Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958) (holding that district court had jurisdiction over suit to set aside agency certification of collective bargaining unit where agency action was taken "in excess of its delegated powers and contrary to a specific prohibition in the Act); *Dart*, 848 F.2d at 223 (finding that "[t]he responsibility of determining the limits of statutory grants of authority . . . is a judicial function entrusted to the courts by Congress") (quoting *Stark v. Wickard*, 321 U.S. 288, 310 (1944)).

TACC's Complaint alleges that the quota directive is *ultra vires* because it patently violates 30 U.S.C. § 814(a), which requires that a citation be based solely upon an actual violation of federal mining laws or regulations. (Compl. ¶ 64). Defendants' implementation of a mandatory quota that is completely divorced from any of the statutory criteria is an *ultra vires* exercise of agency authority.

This case is analogous to the district court's decision in *Jasperson v. Federal Bureau of Prisons*, 460 F. Supp. 2d 76 (D.D.C. 2006). In *Jasperson*, the plaintiff sued the Federal Bureau of Prisons ("BOP"), challenging its decision to assign him to a federal prison camp. *Id.* The plaintiff alleged that the BOP failed to consider the individualized statutory criteria which controlled its confinement decision. *Id.* at 79-80. On the strength of this allegation, the district

court reasoned that the plaintiff's pleading had sufficiently alleged that the agency acted *ultra vires*, and as a result, the court found that it had jurisdiction over the case. *Id.* at 85. The same result applies equally here, where TACC has alleged *ultra vires* action – Defendants' adoption of a policy which is fundamentally at odds with section 814(a) of the Mine Act.

### 3. The district court has jurisdiction under the doctrine of nonstatutory review.

Nonstatutory review is available even when a statute specifies a procedure for obtaining judicial review, if the agency action complained of is not subject to the special procedure. *See Maxon Marine v. Dir., Office of Workers' Comp. Programs*, 39 F.3d 144, 146 (7th Cir. 1994). This is because "some residuum of power remains with the district court to review" under "the general grant of federal question jurisdiction of 28 U.S.C. § 1331." *See R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002). Here, TACC's facial attack on the legality of the quota directive is outside the scope of the statutory review provisions set forth in section 815(d) and 816 of the Mine Act, which provides subject matter jurisdiction pursuant to the doctrine of nonstatutory review.

### 4. MSHRC decisions relied upon by defendants do not support its arguments.

Defendants cite to several decisions of the MSHRC for the proposition that it "frequently" decides whether the Secretary's enforcement policies violate section 104(a) of the Mine Act. (Defs. Mem. 6-7). However, each of these decisions bears only on the validity of the particular citation or penalty reviewed, and does not purport to extend beyond the narrow facts of the administrative record presented to the MSHRC. Not one of them granted or denied broad relief striking down an alleged policy or rule.

In *Empire Iron Mining Partnership.*, 29 FMSHRC 999 (2007) – which Defendants represent as an administrative review of the Secretary's alternative violations enforcement policy – the MSHRC stated that, "[w]e emphasize that our holding is *limited to the facts of this case*"

and cautioned that "circumstances may exist in other cases that would make improper the citation of alternative violations."  *Id.* at 1005 (emphasis added).  Likewise, in *Drummond Co.*, 14 FMSHRC 661 (1992), the MSHRC merely held that the Secretary's interim excessive history program was invalid "as applied" to the facts of that particular administrative proceeding.  .  Similarly, the MSHRC's decision in *Twentymile Coal Co.*, 27 FMSHRC 260 (2005), did not declare that MSHA's policy of issuing dual citations against both a production operator and its independent contractor was facially invalid on a prospective basis; instead, it only vacated the citations that were the subject of that particular administrative proceeding.  *See also Keystone Coal Mining Corp.*, 16 FMSHRC 6, 16 (1994) (same); *SCP Investments*, *LLP*, 30 FMSHRC 544, 551 (2008) (same); *Summit*, *Inc.*, 19 FMSHRC 1326, 1346 (1997) (same).  Thus, contrary to Defendants' arguments, the cited MSHRC decisions show that TACC cannot obtain the requested review and relief before the Commission.  A single proceeding before this Court will resolve the challenge to the quota, whereas administrative litigation would require multiple, repeated challenges of the same quota which will still likely not result in a final resolution.

### 5.  Defendants' argument on formal regulation is unavailing.

Citing *Sturm*, *Ruger & Co. v. Chao,* 300 F. 3d 867, 875 (D.C. Cir. 2002), Defendants also argue that a generic challenge to a policy that is not a formal regulation must be litigated before the agency.  (Defs. Mem. 10).  However, in *Sturm,* the court based its decision on its finding that there was no reason why the petitioner could not challenge the policy "in an individual adjudication before the commission since the identical claims in its challenges to citations [were] currently pending before the OSHRC."  300 F. 3d at 875, 876.  Contrary to Defendants' assertion, the court did not base its decision on the difference between a formal regulation and a policy.  Indeed, it would be a nonsensical result to allow MSHA to avoid judicial scrutiny of an unconstitutional rule by simply implementing it informally.  Here, the administrative process is

designed for litigation of individual safety violations, not broad-based constitutional challenges to overarching policies such as this quota. It will be impossible to fully and fairly litigate the issues raised in this case before an ALJ in the context of an individual citation. For instance, the type of evidence required to prove the existence of a quota could include testimony from MSHA personnel, and even other mine operators, who have no involvement whatsoever in the specific citation being challenged in a particular MSHRC proceeding. Moreover, unlike *Sturm,* where the *identical* claims in the district court case were pending before the agency and the court found that the plaintiff "sought to make an end run around the process by going directly to district court," 300 F. 3d at 876, the cause of action in the present case is not being litigated nor could it be litigated before the MSHRC.

Defendants also argue that the issues in this case "fall squarely within the commission's expertise" (Defs. Mem. 8). However, Defendants never explain how an MSHRC ALJ has the expertise to deal with a broad-based constitutional challenge to this quota or how such an issue is "relevant" to the litigation of individual safety citations. While MSHRC judges are well-qualified to evaluate the technical application of MSHA's detailed safety regulations, a federal district court is the proper forum for a constitutional, *ultra vires* action to an agency quota.

**B. This Court Has Subject Matter Jurisdiction Over Count III For *De Facto* Rulemaking.**

Defendants argue, second, that subject matter jurisdiction over Count III for their *de facto* rulemaking is lacking because 30 U.S.C. § 811(d): (i) vests exclusive jurisdiction over challenges to a "mandatory safety or health standard" with the circuit court of appeals; and (ii) requires an operator to file its challenge to a mandatory standard within 59 days after the standard's promulgation. (Defs. Mem. 10-11). Through selective quotation, however,

Defendants have plainly misconstrued section 101 of the Mine Act. That provision states in full that:

> Any person who may be adversely affected by a mandatory health or safety standard *promulgated under this section* may, at any time prior to the sixtieth day after such standard is promulgated, file a petition challenging the validity of such mandatory standard with the United States Court of Appeals . . .

30 U.S.C. § 811(d) (emphasis added). The clause, "promulgated under this section," is an express reference to the formal notice and comment procedures that TACC alleges were not followed in the case at bar. (Compl. ¶¶ 74-75). On its face, section 101 does not apply to TACC's *de facto* rulemaking claim.

District courts routinely adjudicate actions for declaratory and injunctive relief from *de facto* agency rule making. *See*, *e.g.*, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994) (reversing dismissal of *de facto* rulemaking claim and remanding to the district court); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1352 (D.C. Cir. 1996) (reversing order denying injunctive relief for *de facto* rulemaking and remanding to the district court); *Capital Legal Found. v. Commodity Credit Corp.*, 711 F.2d 253, 257-58 (D.C. Cir. 1983) (assuming district court jurisdiction over *de facto* rulemaking claim, but affirming dismissal based on separate standing issue). By contrast, Defendant's supporting authority of *International Union, United Mine Workers v. MSHA*, 900 F.2d 384 (D.C. Cir. 1990), which did not address a *de facto* rulemaking claim, has no discernable relevance here. (Defs. Mem. 11).

Because section 101(d) of the Mine Act only pertains to judicial review of mandatory health and safety standards that are promulgated in accordance with the very notice and comment procedures that TACC alleges were deprived here, Count III is not untimely under 30 U.S.C. §

811(d), nor was it necessary to bring the action in the United States Court of Appeals. This Court should exercise subject matter jurisdiction over Count III for *de facto* rulemaking.

### C. TACC's Claims Are Ripe For Judicial Review.

Defendants next contend that TACC's claims are not ripe for judicial review because the issues implicated by this case are not fit for judicial decision, and TACC will not sustain a hardship if it is deprived of immediate judicial review. (Defs. Mem. 11-15).

Under *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), courts must evaluate ripeness using a two-pronged test: (i) the fitness of the issues for judicial decision; and (ii) the hardship to the parties of withholding court consideration. 387 U.S. at 149. As to the "fitness of the issues" prong, a claim is "presumptively suitable for judicial review" when it raises purely legal questions. *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 92 (D.C. Cir. 1986). Thus, a purely legal claim in the context of a facial challenge to agency action is "presumptively reviewable." *See*, *e.g.*, *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752,757 (D.C. Cir. 2003). Courts also assess "whether the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form." *Better Gov't Ass'n*, 780 F.2d at 92. As to the second prong, a plaintiff may overcome any institutional interest in deferring review by demonstrating a "'hardship," *i.e.*, that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." *Id.* (citation omitted).

Defendants' analysis of the two ripeness prongs is unpersuasive. First, TACC alleges that the quota directive is a final agency action – it was implemented as early as November 2007, and has continued in effect since then. (Compl. ¶ 18). Second, this facial challenge to the validity of MSHA's quota directive addresses purely legal issues that will not be clarified if

review is delayed for further "factual development." And finally, the quota directive has exacted an immediate hardship on TACC which outweighs any agency interest in deferring review.

### 1. TACC's claims raise purely legal issues.

It is well-settled that claims asserting arbitrary and capricious agency action, or agency action that is contrary to the law, present purely legal issues. *See*, *e.g.*, *Fox TV Stations, Inc. v. FCC*, 280 F.3d 1027, 1039 (D.C.Cir.2002); *Better Gov't Ass'n*, 780 F.2d at 92; *Capitol Technical Servs.*, *Inc. v. F.A.A.*, 791 F.2d 964, 969 (finding that "whether [an] agency decision comports with legislative intent and conforms to certain procedural guidelines" is a purely legal issue). That is because these types of claims require an analysis of the controlling statute, its legislative history, and its judicial interpretation by the relevant case law. *Better Gov't Ass'n*, 780 F.2d at 92 ("Both appellants contend that, on their face, the DOJ guidelines violate FOIA. This question will be resolved by an analysis of FOIA, its legislative history, and its construction by relevant case law."). Thus, this Court's examination of whether the quota directive violates the Mine Act, or is beyond the scope of Defendants' delegated authority, will be a pure legal issue. Moreover, claims that an agency promulgated a *de facto* regulation without providing the requisite notice and opportunity for comment are likewise legal in nature. *Id.* (holding that plaintiff's challenge to informal agency guidelines raised "the purely legal question of whether State violated [the APA] by its failure to give public notice of, and an opportunity to comment on the guidelines"). TACC's Count III for improper *de facto* agency rulemaking is also fit for judicial resolution.

To overcome this obstacle, Defendants argue that "[i]f there were a directive, there would be questions about the exact nature of the directive, the consequences, if any, to an inspector for not satisfying the directive, and whether such a directive has caused inspectors to issue unfounded citations . . . All of these types of questions can and should be adjudicated before the

Commission in the context of a citation contest." (Defs. Mem. 12). An analogous contention, however, was rejected by the court in *Better Gov't Ass'n*. There, the government argued that a facial challenge to informal DOJ guidelines on FOIA fee waivers was not fit for judicial resolution because it would necessitate further factual development into particular FOIA fee waiver requests. 780 F.2d at 93. In finding that the matter was ripe, the court reasoned that "[o]ur appraisal of the legitimacy of the DOJ guidelines in light of the statutory requirements of FOIA and the APA would not be enhanced by the existence of a particular FOIA fee waiver request." *Id.* Similarly, the Mine Act's statutory review procedure is expressly limited to appeals of specific orders, citations, or proposed penalties, and as a result, the procedure does not provide a forum in which a facial challenge can be brought against the quota directive in all of its applications. That is disconnected from the details of any particular citation contest.

TACC challenges the quota directive itself, rather than any particular citation, order or proposed penalty compelled by its promulgation. When a litigant brings a facial challenge to allegedly unlawful agency action, courts have repeatedly held that further factual development on the specific application of the improper policy is irrelevant to the fitness inquiry. *See*, *e.g.*, *Capitol Technical*, 791 F.2d at 969 ("[t]he factual context of a particular ferrying flight for maintenance purposes is not necessary to our analysis of the legality of a ban against all flights by noncompliant aircraft"); *Better Gov't Ass'n*, 780 F.2d at 92; *American Fed. of Gov't Employees v. Fed. Labor Relations Auth.*, 750 F.2d 143, 144 (D.C. Cir. 1984).

In addition, the case cited by Defendants in support of their argument, *Singer Co. v. P.R. Mallory & Co.*, 671 F.2d 232 (7th Cir. 1982) is completely off-point. *Singer* is a patent case in which the appellate court reversed an order enjoining a patent applicant from prosecuting a reissue application before the Patent and Trademark Office ("PTO"). 671 F.2d at 232. There

was no claim that the PTO acted in contravention of its statutory authority, in fact, the agency wasn't even a party to the lawsuit. *Singer*'s analysis has no application here.

### 2. The quota directive is a final agency action.

The quota directive is final because it has already been implemented. The finality requirement should be analyzed under a "flexible" and "pragmatic" approach. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435-36 (D.C. Cir. 1986). Agency action is final if: (i) the action is not merely "tentative or interlocutory" in nature and marks the "consummation" of the agency's decision-making process; and (ii) the action is determinative of "rights or obligations" and has legal consequences. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). In the instant case, the quota directive is not interlocutory – as alleged by TACC's complaint, the quota directive is currently in effect, and has been in effect since, at the latest, November 2007. *See*, *e.g.*, *Better Gov't Ass'n*, 780 F.2d at 93 ("the agency action in question has taken its final form. The DOJ guidelines at issue have been in effect well over two years").

Defendants, however, argue that the quota directive is not final because it does not mark the consummation of the agency's decision-making process *with respect to individual citations*. (Defs. Mem. 13-14). Defendants have again misconstrued the substance of TACC's claims – the agency "decision-making process," for purposes of this lawsuit, is not the adjudication of any particular citation, order, or proposed penalty. Instead, this case attacks Defendants' decision to adopt a quota directive that is unmoored from the requirements of 30 U.S.C. § 814(a). Because the quota directive has been implemented and remains in effect, the challenged agency decision is "final." *See e.g.*, *Better Gov't Ass'n*, 780 F.2d at 93.

Defendants' supporting authority does not suggest otherwise. In *Bethlehem Steel Corp. v. EPA*, 536 F.2d 156 (7th Cir. 1976), the appellate court held that the requirement of finality was missing because the EPA's designation of certain counties as "air quality maintenance areas"

was merely interlocutory. 536 F.2d at 156. The court reasoned that despite the challenged designation, the EPA had not formulated any specific maintenance plans or requirements for those counties chosen for designation. *Id.* As a result, the plaintiffs had not been subjected to any regulatory standard at the time they filed suit, nor was compliance with these hypothetical standards expected of them. *Id.* at 162. The facts of *Bethlehem Steel* are equivalent to Defendants merely announcing a quota directive, but not yet implementing it. That is not what is alleged by TACC's Complaint, and *Bethlehem Steel* therefore has no import here.

### 3. The hardship to TACC outweighs the benefit of postponing review.

In order to demonstrate "hardship," a plaintiff must show that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." *Better Gov't Ass'n*, 780 F.2d at 92. The quota directive has had an immediate impact. The issuance of unfounded citations against TACC has necessitated costly citation contests that TACC would not have been otherwise subject to had the quota directive not been in place.

Defendants' assertion that "[t]he fact that American Coal must participate in further administrative proceedings is not a hardship sufficient to outweigh a determination that an issue is unfit for review" is based on a misreading of *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998). There, and unlike the quota directive here, the challenged agency logging plan was not in effect. In addition, the Court's analysis assumed that an administrative challenge to one site-specific logging decision (based on the plan's unlawfulness) would have issue preclusive effect in all other site-specific logging decisions made pursuant to the plan going forward. *Ohio Forestry Ass'n,* 523 U.S. at 734-35. For the reasons given *supra*, at Argument I(A)(1)(c), a favorable decision on the quota directive in the MSHRC would not have collateral estoppel effect in any other citation contest. Finally, the *Ohio Forestry Ass'n* Court took care to limit the

scope of its ruling. The Court held that avoiding the cost of repetitive litigation is not "sufficient *by itself* to justify review in a case that would *otherwise be unripe*." *Id.* at 735 (emphasis added). When, as is the case here, the first prong of the ripeness test has been satisfied, this Court should determine that the matter is ripe for adjudication. *See GE v. EPA*, 290 F.3d 377, 381 (D.C. Cir. 1992) ("[W]here the first prong of the . . . ripeness test is met and Congress has emphatically declared a preference for immediate review . . . no purpose is served by proceeding to the second or hardship prong.") (citation omitted).

## II. Each of TACC's Counts Adequately States a Claim Upon Which Relief Can Be Granted.

### A. Federal Rule of Civil Procedure 12(b)(6) Standard.

As the Rule 12(b)(6) movant, Defendants carry "the 'very high burden' of showing that [TACC] cannot conceivably prove any set of facts that would entitle [it] to relief." *Beck v. Deloitte & Touche,* 144 F.3d 732, 735-736 (11th Cir. 1998). TACC's claims should not be dismissed unless it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations. *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir. 1993). The Court must construe the Complaint in the light most favorable to TACC, and accept all factual allegations as true. *DeLorean Motor Co. v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993). All that need be specified is the bare minimum facts necessary to put Defendants on notice of the claim so that they can answer. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002). Further, should a Rule 12(b)(6) motion be granted, only in rare cases would a district judge be justified in dismissing a complaint with prejudice. *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 749 (7th Cir. 2005).

**B. TACC's Count I States a Claim For Deprivation of Procedural Due Process.**

To establish a procedural due process claim, a plaintiff must allege that: (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the government did not afford it adequate procedural rights prior to that deprivation. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). In addition, statutes or regulations create a protected property interest if they place "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).

Defendants contend that the Complaint fails to allege that TACC was not afforded constitutionally adequate procedural rights. (Defs. Mem. 15-16). TACC, however, alleges that it "has a legitimate claim of entitlement to a MSHA inspection and investigation prior to the issuance of any § 104(a) against it," and that the quota directive has deprived it of this constitutionally-cognizable property right. (Compl. ¶¶ 49-50). Specifically, section 104(a) of the Mine Act imposes a statutory limit on the Secretary's authority to issue citations – they must be based on facts and evidence ascertained through an inspection or investigation, and they must be based on an actual violation of law. 30 U.S.C. § 104(a). The quota directive alleged by TACC's Complaint is entirely divorced from these two statutory pre-conditions to agency action. Thus, as TACC has alleged, the "quota directive . . . wholly deprives Plaintiff of this necessary procedure." (Compl. ¶ 50). Count I states a claim for deprivation of procedural due process.

Moreover, the fact that assessed penalties for a particular citation do not become payable until completion of the statutory review process refutes only a straw man argument. First, as fully explained above, this suit attacks Defendants' unlawful quota directive in all of its applications, and it does not seek the vacatur of any specific citation, order, or proposed penalty. Second, one necessary consequence of the quota directive – needlessly repetitive administrative review proceedings to contest erroneous citations – exacts a "concrete cost" that is a "cognizable

Article III injury." *Sea-Land Serv. v. DOT*, 137 F.3d 640, 648 (D.C. Cir. 1998); *see also Hospital Council of Western Pennsylvania v. Pittsburgh*, 949 F.2d 83, 87 (3d Cir. 1991) (finding that financial harm from initiation of tax exemption challenges was concrete injury); *Litgo New Jersey*, *Inc. v. Jackson*, No. 06-2891 (AET), 2006 WL 3333486, at *3 (D.N.J. Nov. 16, 2006). This property deprivation also sustains TACC's Count I for violation of procedural due process.

And last, the procedural due process claim asserted by the plaintiff in *Thunder Basin* is different in kind than the constitutional action alleged in the instant case. The *Thunder Basin* plaintiff claimed that if it was forced to contest an MSHA citation through the Mine Act's statutory review mechanism, its procedural due process rights would be abridged. *Thunder Basin*, 510 U.S.. at 214. The procedural due process violation here, however, is not based on the alleged insufficiency of the Mine Act's statutory review procedures for contesting citations, orders, or proposed penalties. Instead, TACC alleges that the imposition of an *ultra vires* quota itself renders the adjudicative process constitutionally deficient by greatly increasing the risk of erroneous and unfounded citations and deprives TACC of the statutorily guaranteed procedural right that citations must be assessed on the merits, rather than because of a predetermined quota. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."); *see also J&B Entertainment v. City of Jackson, Mississippi,* NO. Civ. A. 3:06-CV-144WS, 2006 WL 1118130, at * 9 (S.D. Miss. Apr. 7, 2006) (finding that the plaintiff's procedural due process rights were violated "due to the manner in which [the City of Jackson] administered the licensing provisions of its Ordinance."). No such comparable allegation was made in *Thunder Basin*, and the case is unavailing of Defendants' position.

## C. TACC's Count II States a Claim For *Ultra Vires* Action.

Next, Defendants assert that Count II should be dismissed for failure to state a claim because:

> [A] directive that MSHA inspectors issue a minimum number of citations per inspector hour is not patently inconsistent with Section 104(a)'s requirement that citations be issued for actual violations.  Whether an inspector issues a citation with a quota directive in mind does not answer the question whether the citation is proper under Section 104(a) of the Mine Act . . .

(Defs. Mem. 16).  By making this argument, Defendants have done nothing more than challenge the underlying *factual* premise of TACC's claim.  That is manifestly inappropriate at the pleading stage, where the Court must construe the Complaint in the light most favorable to TACC, and accept all of its factual allegations as true.  *Ineos Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 497 (7th Cir. 2009).  TACC expressly alleges that the quota directive is a patent violation of the Mine Act, which directly contravenes its provisions and has no basis in law.[3] (Compl. ¶¶ 1, 45, 64).  *See, e.g.*, *Dart*, 848 F.2d at 222 (an agency acts *ultra vires* when its conduct "on its face" violates a statute); *Aid Ass'n for Lutherans*, 321 F.3d at 1172 (*ultra vires* action is outside the scope of an agency's statutory authority).  At most, Defendants' motion has only raised a *fact issue* as to the veracity of these allegations.

Moreover, Defendants wholly fail to substantively respond to the Complaint's allegation that MSHA's actions in entering the New Future Mine without notification contravene Section 2 of the MINER Act.  Defendants' memorandum argues that this action was done as part of the quota; however, that is not what TACC pled.  Rather, the Complaint alleges that these improper

---

[3] Moreover, Defendants fail to substantively respond to the Complaint's allegation that MSHA's actions in entering the New Future Mine without notification contravene Section 2 of the MINER Act.  Defendants' memorandum argues that this action was done as part of the quota; however, that is not what TACC pled.  Rather, the Complaint alleges that these improper inspections were a separate *ultra vires* course of conduct.  (Compl. at ¶¶ 34-38).

inspections were a separate *ultra vires* course of conduct. (Compl. at 34-38). Dismissal is therefore unavailable under Rule 12(b)(6).

### D. TACC's Count III States a Claim for *De Facto* Rulemaking.

"It is well-established that an agency may not escape the notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000). TACC's Complaint alleges that the quota directive affects the rights of broad classes of unspecified individuals, and as such, amounts to *de facto* rulemaking that is subject to section 3 of the APA. (Compl. ¶ 75-76); 30 U.S.C. § 811; 5 U.S.C. §§ 553(b) and (c)). These allegations state a claim for improper *de facto* rulemaking. *See Yesler Terrace Community Council*, 37 F.3d at 448 ("adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals"). Defendants nonetheless argue that the quota directive falls within the "rules of agency . . . procedure" and "general statements of policy" exceptions to section 3 of the APA. (Defs. Mem. 17-18).

First, the quota directive is not a mere "rule of agency procedure." Defendants cite *American Hospital Ass'n v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987) for the proposition that a substantive rule subject to section 3 of the APA is one which "puts a stamp of agency approval or disapproval on a given type of behavior," (Defs. Mem. 17), but their implicit suggestion that substantive rules are only those which impose standards of conduct on an operator is belied by their own case. *American Hospital* held that a substantive rule can also be one which "encodes a substantive value judgment" by the agency. 834 F.2d at 1047. The quota directive does, in fact, reflect a substantive value judgment by MSHA that the volume of citations assessed by its inspectors must meet a numerical threshold that has nothing to do with the facts and circumstances developed during an investigation made pursuant to section 104(a) of the Mine

Act.  30 U.S.C. § 814(a).  Moreover, the quota directive is a new substantive requirement – it effectively imposes a new inspection regime.  *See Appalachian* Power, 208 F.3d at 1024, 1027 (holding that EPA "guidance" document was substantive rule because it subjected the plaintiffs to more frequent emissions monitoring, and accepting the plaintiffs' argument that "[i]n practical effect, it creates a new regime, a new legal system governing permits, and as such it should have been . . . promulgated in compliance with notice and comment rulemaking procedures").  The imposition of this unlawful quota has therefore substantively altered the rights and interests of a broad class of unspecified individuals, and Count III does not fall within the "rule of agency procedure" exception to the notice and comment requirement.

Second, the quota directive is not a mere "general statement of policy."  A policy statement:  (i) "must operate only prospectively"; and (ii) "must leave the agency some freedom in which to exercise discretion."  *Assure Competitive Transp.*, *Inc. v. United States*, 635 F.2d 1301, 1307 n.6 (7th Cir. 1980).  Because they must be "prospective," a policy statements are defined as "mere[] announcement[s] to the public of the policy which the agency hopes to implement in future rulemakings or adjudications."  *Pacific Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974).  That is plainly not the case with the instant quota directive.  Next, the quota directive does not "leave MSHA inspectors free to exercise discretion."  (Defs. Mem. 19).  To the contrary, the quota directive fundamentally deprives MSHA inspectors of their discretion because "the rigid application of a .4 violation per inspector hour quota simply does not implicate agency expertise."  (Compl. ¶ 62).

The quota directive is not exempted from the notice and comment rulemaking requirements set forth in section 3 of the APA.  This Court should deny Defendants' motion to dismiss Count III for failure to state a claim.

## CONCLUSION

WHEREFORE, TACC respectfully requests that this Court enter an order denying Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) in its entirety, and for any other relief it deems just and appropriate.

Dated:  March 25, 2009                    Respectfully submitted,

                                          THE AMERICAN COAL COMPANY

                                          ___s/ Richard E. Lieberman_____
                                          One of Its Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I, Richard E. Lieberman, an attorney, certify that on March 25, 2009, a copy of the foregoing *Plaintiff's Response in Opposition to Defendants' Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motion to Dismiss* was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> James M. Hipkiss
> Assistant United States Attorney
> Southern District of Illinois
> 9 Executive Drive
> Fairview Heights, Illinois 62208
> Jim.Hipkiss@usdoj.gov

>   /s  Richard E. Lieberman