IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE AMERICAN COAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-0814-MJR |
| | ) | |
| MINE SAFETY AND HEALTH ADMIN- | ) | |
| ISTRATION, RICHARD STICKLER, | ) | |
| KEVIN G. STRICKLIN, ROBERT L. | ) | |
| PHILLIPS, DAVID L. WHITCOMB, | ) | |
| KEITH ROBERTS, and STEVE MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Defendants, including the Mine Safety and Health Administration (MSHA), move that the Court dismiss the suit of the American Coal Co. for lack of subject-matter jurisdiction and for failure to state a claim. (Doc. 10.) Finding that the Court has jurisdiction but that the suit fails to state a claim, the Court will grant in part defendants' motion.

**A.     Introduction and Procedural Background**

The American Coal Co. is a coal mine operator. The MSHA is the federal agency responsible for administering the provisions of the Federal Coal Mine Health and Safety Act of 1977 (Mine Act). § 301(a), 29 U.S.C. § 557a (2006). These responsibilities include inspecting mines and enforcing health and safety regulations. The other defendants are employees of the MHSA, and are named in their official capacities.

1

On November 17, 2008 American Coal sued the MSHA alleging that it employed a citation quota that caused inspectors to issue baseless citations to American Coal.[1] American Coal's complaint alleges the following:

On December 13, 2007, Defendant Miller, a Coal Mine Inspector, stated to employees of American Coal that his MSHA superiors had directed him to issue 0.4 citations per inspection hour. American Coal alleges that, according to publically available MSHA data, violations found per inspection hour were 0.23 in 2007, and hovered around 0.17 violations per inspection hour from 2000 to 2004. American Coal alleges that since November 2007, the 0.4 citation per hour quota has resulted and will continue to result in baseless citations being issued against American Coal. These citations may result in the company going out of business.

On January 1, 2009, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6) (Doc. 10), and filed a memorandum in support of their motion (Doc. 11). On March 25, 2009, American Coal filed a response in opposition to Defendants' motion (Doc. 23). On April 9, 2009, Defendants replied to American Coal's response (Doc. 28). On April 14, 2009, American Coal filed a sur-reply (Doc. 34).

### B.   Analysis

1.   Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge*

---

[1] American Coal notes that defendant did not respond to its allegations regarding the mine emergency response plan requirement and its right as a mine operator to participate in MSHA inspections. This is understandable, as only the quota issue is mentioned in support of any of American Coal's claims. Since the complaint does not explain what sort of claim these other factual allegations give rise to, the complaint only states claims based on the alleged quota. American Coal also uses language reminiscent of a substantive due process

*No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute. *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008). Dismissal under Rule 12(b)(1) is required if the court lacks subject-matter jurisdiction. When ruling on a motion to dismiss for lack of subject-matter jurisdiction, "a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Id.* at 656. A "district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 656–57.

    Defendants' first challenge to subject-matter jurisdiction is that statute dictates that Counts I and II be resolved through the administrative review process and that exclusive jurisdiction over Count III is in the Court of Appeals. They also argue that the claims are not ripe for judicial review. The Court will consider ripeness first.

*Ripeness*

    The issue of ripeness centers on the notion that courts should not render a decision absent a real need to resolve a real dispute. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). Whether a case is ripe for review depends upon whether the issues are fit for judicial determination and the hardship to the parties of withholding court consideration. *Id.* In determining whether an issue is fit for judicial determination the court must first look at whether the issues are sufficiently concrete at this time to prevent the Court from entangling itself in an abstract disagreement over administrative policies. *Bethlehem Steel Corp. v. EPA*, 536 F.2d 136,

---

claim, but has not raised such a claim.     3

160–61 (7th Cir. 1976).

Defendants contend that the issues presented here are not fit for judicial determination. American Coal has direct challenges to the citations issued that are pending before the Administrative Law Judges. Defendants argue that determining whether the quota has caused inspectors to issue unfounded citations requires waiting for final disposition of the administrative citations against American Coal. (Defs.' Mem. in Supp. 11.) It does not. The final disposition of an individual citation is merely evidence towards proving the alleged pattern of wrongdoing caused by the quota. Additionally, waiting for more evidence would be of scant value. Mines must be inspected at least twice per year. Mine Act § 103(a), 30 U.S.C. § 813(a). The alleged quota will produce baseless citations at each inspection. According to Defendants, American Coal's challenges to citations issued in late 2007 were still pending in January 2009. (Defs.' Mem. in Supp. 12.) Since citations are issued more than once a year and challenges apparently take longer than a year, as long as the quota remains in effect there will always be citations pending against American Coal. American coal seeks injunctive and declaratory relief, not a determination that baseless citations were issued against it. Newer citations are at least as relevant as older citations when the question is whether the quota will cause baseless citations to be issued against American Coal in the future. Final disposition of the latest citations will always be off in the future.

Finally, Defendants argue that the quota is not sufficiently final because it does not mark the end of the agency's decision-making process and does not require American Coal to take any action. (Defs.' Mem. in Supp. 12–13.) The Court disagrees. An action is sufficiently final if legal consequences follow. *See W. Ill. Home Health Care v. Herman*, 150 F.3d 659, 662

4

(7th Cir. 1998). As pleaded, inspectors are held to the alleged quota and issue citations based on the alleged quota. The pleaded quota, then, has enough legal consequences to be sufficiently final. Since the directive is sufficiently final and no improvement can be expected in the state of the relevant facts, the issues here are as ripe as they will ever be. It is unnecessary to consider hardship to the parties as there is no reason to delay.

*Administrative review process*

Defendants' also challenge subject-matter jurisdiction by claiming that Counts I and II of American Coal's suit must be adjudicated through the administrative review process of §§ 105, 106 and 113 of the Mine Act, 30 U.S.C. §§ 815–816, 823 (2006). American Coal argues that its claims are "wholly collateral" to the Mine Act's statutory review provision and that a lack of jurisdiction by this court would foreclose all meaningful judicial review.

Administrative agencies are created by statute, and cannot exceed the jurisdictional authority assigned to them by statute. *See, e.g.*, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472–73 (1977); *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961); *United States v. Seatrain Lines*, 329 U.S. 424, 431–33 (1947). Administrative agencies have jurisdiction over the initial review of a matter when "such intent is fairly discernible in the statutory scheme." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). Whether a statute vesting initial review jurisdiction in an administrative agency precludes initial judicial review depends on "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.* The Supreme Court has upheld district court jurisdiction over claims which are "wholly collateral" to a statutes review provisions and outside the agency's area of expertise, particularly when a finding of preclusion

5

could foreclose all meaningful judicial review. *Id.* at 212–13.

The Mine Act provides for hearings before an administrative law judge when mine operators contest orders, citations, proposed penalties, or the time allowed for abatement of violations. § 105(d), 30 U.S.C. § 815(d) (2006). It further provides for review of the decisions of administrative law judges by the Federal Mine Safety and Health Review Commission at the discretion of the Commission. *Id.* § 113, 30 U.S.C. § 823(d). The Courts of Appeals have jurisdiction to review decisions of the Commission, with possible subsequent review by the Supreme Court through certiorari. *Id.* § 106, 30 U.S.C. § 816 (citing 28 U.S.C. § 1254).

Defendant relies heavily on *Thunder Basin Coal Co. v. Reich*. 510 U.S. 200, 207 (1994). In *Thunder Basin*, workers in a non-union mine designated union employees who were not employees of the mine as their representatives. *Id.* at 204. The Mine Act provides a representative of the miners opportunities to participate in mine safety related activities, such as attending inspections and reviewing safety reports. *Id.* at 203–04. The act requires the company to post information regarding the designated representatives at the mine. *Id.* (citing 30 C.F.R. pt. 40). Rather than posting contact information for the union representatives as required by part 40 of C.F.R. title 30, the company filed suit in district court seeking an order enjoining the MSHA from enforcing the regulation. *Thunder Basin*, 510 U.S. at 205. The Supreme Court held that the district court lacked jurisdiction over Thunder Basin's claims. *Id.* at 216. Thunder Basin's claim was pre-enforcement only because the company sued before a citation was issued. *Id.* Thunder Basin's claims turned on a question of statutory interpretation that could have been reviewed under the Mine Act. *Id.* Defendants argue that American Coal's case is similar, and that American Coal seeks to avoid the administrative review process for violations of the Mine Act.

6

The Mine Act established a detailed structure for reviewing violations of "any mandatory health or safety standard, rule, order, or regulation promulgated" under the act. *Id.* at 207 (citing 30 U.S.C. § 814(a)). The act gives exclusive jurisdiction to agency enforcement proceedings, but is facially silent on pre-enforcement claims. *Id.* at 208. In Thunder Basin's case, the company sought to avoid administrative adjudication of its planned violation of 30 C.F.R. pt. 40 by obtaining preemptive relief from the district court. *Id.* at 205. Here there is no particular violation which American Coal seeks preemptive relief from. Nor does American Coal seek to avoid the usual administrative review process for any citations which are issued. Rather than seeking relief from a responsibility imposed on it by a health or safety standard, rule, order or regulation, American Coal seeks relief from an agency policy governing agency employee productivity. Thunder Basin, in contrast, sought relief from a responsibility imposed on it by a regulation. American Coal's claims are not of the type the Supreme Court found the district courts lacked jurisdiction over in *Thunder Basin*.

The Supreme Court determined that Congress designed the Mine Act to streamline enforcement of mine health and safety regulations by keeping citations out of the district courts. *Id.* at 208–11. Allowing Thunder Basin to circumvent that process by suing in district court would have defeated the purpose of the Mine Act. *Id.* Consideration of American Coal's claim by a district court would not frustrate efforts to enforce mine safety laws. It involves no particular citation, so allowing the district court jurisdiction does not threaten to delay enforcement of the Mine Act and MSHA regulations as it did in *Thunder Basin*.

Defendants cite a number of Commission and ALJ opinions for the proposition that administrative review can handle constitutional questions and issues implicating statutes

7

outside the Mine Act. (Defs.' Mem. in Supp. 6–7.) While this is true, these cases involve challenges to citations and penalties. *See Empire Iron Mining P'ship*, 29 F.M.S.H.R.C. 999 (2007) (alleging alternative violations were improper); *Twentymile Coal Co.*, 27 F.M.S.H.R.C. 260, 263 (2005) (reviewing six citations issued to a mine operator as a result of violations by an independent contractor); *Keystone Coal Mining Corp.*, 16 F.M.S.H.R.C. 6. 10–15 (1994) (reviewing a specific citation to determine if a spot dust sampling program violated the rule making requirements of § 204(f) of the Mine Act.); *Drummond Co. Inc.*, 14 F.M.S.H.R.C. 661, 661 (1992) (involving calculation of penalties stemming from seven citations); *Summit, Inc.*, 19 F.M.S.H.R.C. 1326, 1326, 1339 (1997) (reviewing whether sufficient evidence that a hazardous condition was present before an accident existed to support a citation); *SCP Investments, LLP*, 30 F.M.S.H.R.C. 555 (2008) (dealing with citations).

    Defendants also cite *Kaiser Coal Corp.*, 10 F.M.S.H.R.C. 1165, 1169 (1988), for the proposition that an administrative law judge can grant declaratory relief under the mine act. (Defs.' Mem. in Supp. 7.) However, the Commission goes on to state that the Mine Act did not provide jurisdiction over actions for the sort of declaratory relief sought in *Kaiser Coal*. *Id.* at 1169–72. An administrative law judge also declined jurisdiction over patterns of enforcement abuse, and ruled that he was unable to provide injunctive relief under the Mine Act. *Mid-Continent Res., Inc.*, 11 F.M.S.H.R.C. 1015, 1032–38, 1042–44 (1989). According to the Commission, it "has no authority with respect [to] MSHA's internal practices and procedures." *Sanders*, 18 F.M.S.H.R.C. 377 (1996) (citing *Wallace Bros.*, 14 F.M.S.H.R.C. 586, 587 (1992)). The termination of a citation destroys jurisdiction. *Fla. Canyon Mining, Inc.*, 22 F.M.S.H.R.C. 523, 523–24 (2000). Previous administrative decisions indicate that plaintiff's claims are beyond

the jurisdiction of the administrative review process established by the Mine Act, and no statute indicates otherwise.

District court jurisdiction over claims wholly collateral to the Mine Act is particularly appropriate when a finding of preclusion would foreclose all meaningful review. *Thunder Basin*, 510 U.S. at 212–13. Whether a statute precludes initial judicial review depends on "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.* at 207. First, we note that the Mine Act did not give jurisdiction over the claims alleged in this complaint to the administrative review process it established. Section 105(d) grants jurisdiction over review of orders, citations, proposed penalties, and time allowed for abatement of violations. 30 U.S.C. § 815(d). Section 105(b)(2) allows applications for temporary relief from orders issued pursuant to § 104. *Id.* § 815(b)(2). Section 107(e) permits challenges to withdrawal orders closing mines or portions thereof. *Id.* § 817(e). Section 105(c) provides for complaints of discrimination related to a miner's rights under the Mine Act. *Id.* § 815(c). Section 111 allows complaints by miners for compensation. *Id.* § 821. Defendants have not pointed out a particular provision providing for administrative review of this case.

Administrative review is only allowed for certain claims enumerated in the Mine Act, and American Coal's claim does not fit within any of the enumerated categories. American Coal could only present its claims for administrative review in the context of individual citation challenges. Such scattershot review is insufficient for "pattern and practice" claims when the facts relevant in an individual case are insufficient to allow meaningful review. *See McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 497 (1991); *Nat'l Mining Ass'n. v. Dep't of Labor*, 292 F.3d

9

849, 858–59 (D.C. Cir. 2002). Evidence in citation contests is limited to that which is relevant to the individual citation in question. 29 C.F.R. § 2700.63 (2009). American Coal could not fully present its claim in a citation contest, as evidence irrelevant to a particular citation could easily be relevant in proving the issues raised here. For example, the existence of a quota would not be relevant to proving whether a particular safety hazard existed. The limited jurisdiction and rules of administrative review preclude meaningful review of American Coal's claims.

This case is closer to *McNary v. Haitian Refugee Center* than it is to *Thunder Basin*. In *Haitian Refugee Center*, the Supreme Court held that a statute prohibiting judicialreview of certain immigration status determinations did not preclude district court jurisdiction over constitutional challenges to the way those determinations were made. 498 U.S. at 487–88. The Third Circuit summarized the Court's reasoning in *Haitian Refugee Center* quite succinctly. *See Massieu v. Reno*, 91 F.3d 416, 423 (3d Cir. 1996). "First, the Court concluded that the plaintiffs' claims did not fall within the language of the provision of the statute that was said to preclude district court jurisdiction." *Id.* at 423 (citing *Haitian Refugee Ctr.*, 498 U.S. at 492). Here American Coal's claims are beyond the jurisdiction of the administrative review process, and American Coal does not seek pre-enforcement determination of a question otherwise clearly within administrative jurisdiction.

Second, in *Haitian Refugee Center* "the Court emphasized that the plaintiffs' challenge did not go to the merits of their applications for adjustment of status." *Id.* at 423 (citing *Haitian Refugee Ctr.*, 498 U.S. at 495). The plaintiffs sought relief from procedural rules which would allow their cases to be reopened and reexamined by the INS. *Haitian Refugee Ctr.*, 498 U.S. at 495. Like the *Haitian Refugee Center* plaintiffs, American Coal does not challenge the

10

process used in resolving cases, but rather a broad policy which it contends causes mine inspectors to violate rules.

Finally, in *Haitian Refugee Center*, "the Court found that, absent jurisdiction in the district court, the plaintiffs would not have been able to obtain any meaningful judicial review." *Massieu*, 91 F.3d at 423 (citing *Haitian Refugee Ctr.*, 498 U.S. at 496–98). Meaningful review here is precluded by limits on jurisdiction and the inadmissibility of important evidence in administrative proceedings.

In summary, American Coal's claims are outside administrative jurisdiction and wholly collateral to the Mine Act's review provisions. Additionally, a finding that the district court lacked jurisdiction would preclude any meaningful adjudication of American Coal's claims.

Besides the jurisdictional challenges to Counts I and II, Defendants also contend that American Coal's third claim should be dismissed because § 101(d) of the Mine Act vests jurisdiction over challenges to rules promulgated by the MSHA in the courts of appeals. The courts of appeals have jurisdiction over "mandatory health or safety standard[s] promulgated under this section." Mine Act § 101(d), 30 U.S.C. § 811(d). Mandatory health and safety standards must be promulgated in accordance with notice and comment rule-making. *Id.* § 101(a), 30 U.S.C. § 811(a) (citing 5 U.S.C. § 553). Section 553 does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Section 553 also excludes matters "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." *Id.* § 553(a)(2). Only "substantive" or "legislative" rules fall under notice and comment

11

requirements of § 553. *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993).

The alleged quota is not a "mandatory health or safety standard promulgated under this section" over which § 101(d) of the Mine Act would vest jurisdiction in the courts of appeals. If a quota is an internal agency or employee policy matter, it is excluded from the notice and comment rule making requirements of § 553. The text of § 101(d) of the Mine Act contemplates notice to the public, provides a short period of less than sixty days for challenges, and requires that any objections to a rule must be brought to the secretary before a court may consider them. Regardless of whether the quota is a substantive rule or an internal agency matter, the quota was not promulgated according to the notice and comment procedures contemplated by the Act and 5 U.S.C § 553. Further, interpreting § 101(d) of the Act to cover unannounced rules would impose the section's challenge period of fifty-nine days after promulgation on such rules. Allowing only fifty-nine days to challenge an unannounced policy would be shockingly unfair, and the statute does not contemplate a challenge period running from the date the rule is announced or the date a potential challenger acquires actual or constructive knowledge of the rule. The language of § 101(d) of the Act does not vest jurisdiction over Count III in the courts of appeals.

    2.    <u>Stating a Claim</u>

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan*, 570 F.3d at 820. A complaint insufficiently states a claim upon which relief can be granted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007); *EEOC v. Conentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). However, "specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (alteration in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *Tricontinental Indus., Inc. v. PriceWaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006).

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. 526 F.3d 1074, 1083 (7th Cir. 2008). "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Id.* (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)); *accord Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

American Coal's first claim (Count I) is that the quota violates due process by forcing mine inspectors to issue baseless citations. Defendants challenge that Count I does not state a claim because, as pleaded, there has been no violation of due process. The Court agrees.

Analysis of a procedural due process claim involves a two part analysis: "first, we ask whether the plaintiff has been deprived of a protected liberty or property interest; if so, we ask whether the deprivation occurred without due process." *Pro's Sports Bar & Grill, Inc. v. City*

13

*of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). American Coal argues that it "has a legitimate claim of entitlement to a MSHA inspection and investigation" prior to the issuance of any citations against it. (Pl.'s Resp. 25.) In effect, American Coal is arguing that without an inspection or an investigation, they are issued citations which deprive it of its property rights because they have to pay litigation costs. Herein lies the problem: simply increasing litigation costs is not a deprivation of a property right. The MSHA is not taking the money by force nor mandating that the litigation costs be paid to it. Granted, the MSHA may impose a fine later, but that has an opportunity for judicial review before becoming final. Procedural due process is satisfied, as pleaded, so these facts do not state a due process claim.

American Coal's second claim is that the quota violates § 104(a) of the Act by causing the issuance of baseless citations and is therefore "patently inconsistent" with the Mine Act. There is no patent inconsistency, though, with a very large quota and § 104(a). Section 104(a) requires the Secretary or an authorized representative to issue a citation when "believing" that a violation of the chapter or promulgated safety standard took place. A large quota is not inconsistent with this statute; the Secretary or the authorized representatives still can only issue citations on belief regardless of how many they are supposed to issue. The alleged after-effect of the very large quota, that they would issue more baseless citations, would not be a patent inconsistency, i.e. one appearing on the face of the quota, but a latent inconsistency, i.e. an inconsistency that appears only after the quota is applied. Defendants correctly contend that the MSHA has the power to issue a quota directive to its own employees. Any latent inconsistencies would not render the quota *ultra vires*.

American Coal tries to avoid dismissal of Count II by arguing that it "expressly alleges that the quota directive is a patent violation of the Mine Act." Not so fast. Although the Court has to accept all well-pleaded *facts* as true, it does not need to accept all well-pleaded *legal conclusions*. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" on a motion to dismiss); *see also Bell Atl. Corp*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286). Whether the quota, as alleged, is a patent violation of the Mine Act is a question of law, which the Court is competent to address even if a litigant puts in a pleading its own conclusion. As pleaded, the quota does not violate the Mine Act. Count II should be dismissed.

American Coal's third claim is that in order to implement a quota, the MSHA must follow the notice and comment rule-making procedure specified in § 101(a) of the Act but failed to do so. This claim, too, fails. Section 101 only mandates that mandatory health and safety standards must be promulgated in accordance with 5 U.S.C. § 553, which governs notice and comment rule-making. 30 U.S.C. § 811(a). Section 553 does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.SC. § 553(b)(A). Section 553 also excludes matters "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." *Id.* § 553(a)(2). Only "substantive" or "legislative" rules fall under notice and comment requirements of § 553. *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993).

15

Defendants contend that a quota would be a "rule of agency procedure." Defendants are correct. A quota functions as an employee performance management measure. There is no "stamp of agency approval or disapproval" on a behavior of groups regulated under the Mine Act when a quota is created. *Cf. Chamber of Commerce of the U.S. v. Dep't of Labor*, 174 F.3d 206, 211 (D.C. Cir. 1999) ("A procedural rule is one that does not itself 'alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.' A substantive rule, in contrast, has a 'substantial impact' upon private parties and 'puts a stamp of [agency] approval or disapproval on a given type of behavior.'" (alteration in original) (citation omitted)). American Coal, plaintiffs here but defendants in any subsequent administrative proceeding, may have to contend with more litigation as a result of groundless citations, but that, in and of itself, does not make the quota directive a substantive change. Because such a quota would be a "rule of agency organization, procedure, or practice" and a personnel matter, a quota is exempt from the notice and comment procedure required for mandatory health and safety standards. This claim will also be dismissed.

### 3. Prejudice

Although American Coal's claims must be dismissed, it insists that if a dismissal is warranted under 12(b)(6) it should not be on the merits because dismissal on the merits for failure to state a claim is given only on rare occasions. In support, American Coal cites *Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co.*, 412 F.3d 745 (7th Cir. 2005), but the case reads much more narrowly than American Coal suggests:

> Fidelity's 52-page complaint with its 177 numbered paragraphs is sprawling, confusing, redundant—in short a mess. And a district judge has

16

>        the authority to dismiss a complaint *because it is confusing, though only in a rare case would he be justified in dismissing it on this ground with prejudice*, thus barring the filing of an amended complaint.

*Id.* at 749 (emphasis added) (citations omitted). This complaint is not confusing at all. It clearly does not support the theories for recovery that American Coal advances, so the Court would not be dismissing on the grounds of a confusing complaint. Dismissal on the merits for failure to state a claim is the *usual* course of action on a 12(b)(6) motion. *See, e.g.*, *Waypoint Aviation Services Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006) ("There is a second problem with the judgment. Initially the district court dismissed the suit without prejudice—which not only is inapt (dismissals under Rule 12(b)(6) logically are with prejudice) but also called appellate jurisdiction into question."). However, the Court is not fully convinced that American Coal's allegations do not state a claim. It is possible that the allegations in the complaint entitle American Coal to some sort of relief; whatever that would be, though, would not be under the theories advanced so far. Accordingly, the Court will give American Coal one last chance to justify its suit.

### C. Conclusion

Although the Court has jurisdiction over the suit, American Coal does not present allegations entitling it to relief under the only theories it advances. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss (Doc. 10). It is **DENIED** to the extent that defendants claim the Court lacks subject matter jurisdiction. It is **GRANTED** to the extent that Counts I, II and III are **DISMISSED**. The Court additionally **GRANTS LEAVE TO AMEND THE COMPLAINT** by adding new counts that advance valid theories of relief. American Coal has until March 4, 2010 to amend the complaint. If American

17

Coal does not comply with this deadline, its suit **WILL BE DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED.**

    **DATED February 19, 2010.**

    **s/ Michael J. Reagan**
    **MICHAEL J. REAGAN**
    **United States District Judge**